Kevin J. Sutterfield (3872)
Brett R. Boulton (10802)
**Flickinger & Sutterfield, P.C.**
300 Esquire Building
3000 N. University Avenue
Provo, Utah 84604
(801) 370-0505

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT IN AND FOR
## THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| NATALIE HENDERSON, spouse of decedent ARTHUR HENDERSON; LINDSEY HENDERSON, TYSON HENDERSON, COLTON HENDERSON, KYRAN HENDERSON, DEZAREE HENDERSON, decedent's children; and BERNIE HENDERSON and TERESA HENDERSON, decedent's natural parents,<br><br>Plaintiffs,<br><br>v.<br><br>SALT LAKE COUNTY, and its jail, SALT LAKE COUNTY METRO JAIL, JOHN and JANE DOES I-X, and XYZ ENTITIES I-X,<br><br>Defendants. | **COMPLAINT**<br><br>**(JURY TRIAL REQUESTED)**<br><br>Case No.:<br><br>Judge: |

Plaintiffs complain of defendants as follows:

### STATEMENT OF THE CASE

1.  The heirs of Arthur Henderson ("the decedent"), as defined by Utah Code Ann.

§78-11-6.5, including: Natalie Henderson ("decedent's spouse"); Lindsey Henderson, Tyson Henderson, Colton Henderson, Kyran Henderson, Dezaree Henderson ("decedent's children"); and Bernie Henderson and Teresa Henderson, ("decedent's natural parents") seek declaratory judgment, damages, attorney fees and costs, by reason of federal and state constitutional and common law rights that were violated by the conduct of the Defendants. The primary factual issues brought before this court focus on the Defendants' breach of their duty to reasonably procure the safety of decedent Arthur Henderson while he was in their custody in violation of his constitutional rights under the self-executing provisions of the Utah and the United States constitutions and policies and procedure of the Salt Lake County Metro Jail ("County Jail").

## I. JURISDICTION AND VENUE

2.      This action arises under 42 U.S.C. § 1983 to redress the deprivation under color of state law of rights, privileges and immunities secured by the Constitution of the United States. The jurisdiction of this Court is invoked under 28 U.S.C. §§ 2201 and 2202, 28 U.S.C. § and §1343, the Fourth, Eighth, and Fourteenth Amendments to the Constitution of the United States, and under the doctrine of pendant jurisdiction, the provisions of Article I,§ 9 and § 14 to the Utah Constitution. Plaintiffs' claim arose in this judicial district and venue lies in this district pursuant to 28 U.S.C. §1391(b)(1), (2) or(3).

## II. PARTIES

3.      Plaintiffs, the heirs of Arthur Henderson as set forth above, were individual residents of Utah County and Salt Lake County at the all material times material herein.

4. Arthur Henderson, ("Mr. Henderson"), deceased, was an individual incarcerated in the Salt Lake County Metro Jail at all times material herein.

5. Defendant Salt Lake County, and its jail, Salt Lake County Metro Jail ("Jail") is a political subdivision pursuant to Utah Code Ann. §63-30d-101(7).

6. Defendant Salt Lake County created and operates the Jail and its employees and agents constitute a political subdivision under the meaning of the Utah Governmental Immunity Act.

7. Defendant Salt Lake County is jointly and vicariously liable for all claims arising herein by the acts of its instrumentalities and their agents.

8.. At all times material herein, the employees and agents of Defendant Salt Lake County's Jail were acting within the scope of that employment, and their negligent and careless actions are imputed to Salt Lake County, the political subdivision who is liable for their acts.

9. Within this complaint "Defendant Jail" means and refers collectively to Salt Lake County, Salt Lake County Metro Jail, an their employees and/or agents.

10. Plaintiffs have complied with the requirements set forth in Utah Code Ann. § 63-30d-401 with respect to making a claim against a government entity.

11. Plaintiffs have complied with Utah Code Ann. §63-30d-601 by filing with this complaint the required $300.00 undertaking.

12. Plaintiffs have otherwise satisfied all statutory and procedural requirements prerequisite to bringing this action and hereby request that this action be tried before a jury.

## III. FACTS AND CLAIMS

13. On or about January 28, 2006, Mr. Henderson was booked into the Salt Lake County Metro Jail. As part of the Jail's intake procedure, Mr. Henderson was evaluated with regard to his mental health. An examination performed by Ludmil Manov, M.D. indicated that Mr. Henderson was depressed and had been experiencing suicidal ideations.

14. Also on January 28, 2006, Mr. Henderson was given a mental health evaluation by Dr. Robert Tafoya. Dr. Tafoya noted that Mr. Henderson was "at high risk for self harm" and that Mr. Henderson told him that "there is a 60 percent chance I'll be dead in the morning." Dr. Tafoya also noted that Mr. Henderson refused to sign a no harm agreement and that Mr. Henderson reported a suicide attempt two years earlier. Later that same day, Mr. Henderson was observed pounding his head on his bunk.

15. On January 29, 2006, Mr. Henderson was given Ativan and Geodon and was placed in a "suicide smock." Dale Keller R.N.A.N.P. noted that he did "not consider him acutely suicidal at this time."

16. On January 31, 2006, Mr. Henderson, during a meeting with Dr. Douglas Williams reported that he "told his family goodbye and has attempted to choke himself by swallowing plastic bags contained in his sack lunch," he also told Dr. Williams that he "ha[d] tried to hang himself with his blanket but was unsuccessful." Dr. Williams went on to note that Mr. Henderson told him, "I want to be tied up." Mr. Henderson was left on the Acute Mental Health Unit at this time.

17.     On February 1, 2006, Mr. Henderson was scheduled to have a ECG but officers cancelled the procedure due to safety concerns because they believed that Mr. Henderson was not "mentally stable enough to be around that many wires."

18.     On February 5, 2006, Mr. Henderson was again observed pounding his head on the floor.

19.     On February 6, 2006, Jail employees learned that Mr. Henderson had broken off a piece of cast and was using it to cut himself. He indicated that he "was trying to cut [his] femoral artery" and that he wanted to hurt himself.

20.     On February 7, 2006, Dale Keller, APRN, noted that Mr. Henderson gives unreliable information stating that, "he has reported that he is not suicidal and then later to go (*sic*) on to say he is having panic attacks and feeling like he is suicidal."

21.     On or about February 15, 2006, Mr. Henderson made a written request for medical assistance. In this request, Mr. Henderson states that he had "been hospitalized twice before for major depression at Wasatch Mental Health" and that he "was now in the deepest depression of [his] life." Mr. Henderson then made a request for some antidepressant medication. On this same written request, the nurse notes that Mr. Henderson stated that his depression was "past suicide, beyond wanting to die."

22.     Additionally, on February 15, 2006, Joan Magill, APRN, determined that Mr. Henderson was experiencing "chronic suicidal ideation."

23.     On February 26, 2006, Mr. Henderson was seen by mental health professional

Joan Magill, APRN, where she noted that Mr. Henderson "has chronic suicidal ideation but no intent or plan."

24.     From February 26, 2006, until the time of his death, Mr. Henderson had a checkup with mental health professionals about once a week until the time of his death on April 19, 2006 when it was discovered the Mr. Henderson had hanged himself in his cell with a bed sheet.

25.     Not only did agents and/or employees of the Jail directly observe numerous indications that Mr. Henderson was a serious threat to himself but, in keeping with Jail policies, employees also read Mr. Henderson's mail which detailed his intentions of killing himself up until the time he died.

26.     On April 17, 2006, two days before he died, Mr. Anderson wrote the following to his family, "I will be dead soon. Any suffering will be over. I know it will be hard for everybody but I can't do no more. Everybody stay close to each other and give each other support. Let everybody know that I tried my very hardest. Tommy has instructions for my funeral."

27.     On April 19, 2006, Mr. Henderson was found hanged in his cell with a bed sheet.

28.     Surveillance video of Mr. Henderson's cell block on March 19, 2006 shows a single unidentified guard who was in charge of monitoring all the cells in the cell block.

29.     The only guard in the cell block, inexplicably stands up and leaves his post for an unreasonable amount of time, without be replaced by another guard, during which time Mr.

Henderson shreds his bed sheet and hangs himself.

30. Defendant Jail was negligent in its supervision and care of Mr. Henderson in that, despite countless warnings indicating that Mr. Henderson was suicidal and intended to harm himself, did not house Mr. Henderson in the Acute Mental Health Unit at the time of his death, did not provide adequate security supervision or monitoring, did not maintain regular visits with the mental heath care providers assigned to him, did not provide him with proper medications and/or counseling or other appropriate psychological and medical services to treat his suicidal ideations, did not remove items from his cell that could easily be used to harm himself, and generally failed to reasonably meet their duty to keep Mr. Henderson safe.

31. Defendant Jail was aware or should have been aware of the danger Mr. Henderson was to himself, and such awareness created or should have created a heightened duty of care toward Mr. Henderson. Warnings in this regard include the following: numerous documented suicide attempts, including prior attempts to hang himself with his blanket, attempts to cut his femoral artery, and an attempt to choke himself with plastic bags; documents indicating that Mr. Henderson did not want to live and would take his life, warnings from Mr. Henderson's family that he was suicidal, letters from Mr. Henderson to his family (which were read by employees of the jail) indicating that Mr. Henderson was going to harm himself, and direct communications from Mr. Henderson himself stating that he was going to harm himself.

32. Defendant Jail's negligent and reckless conduct did not further any important, substantial or compelling governmental interest.


33.     Defendant Jail's conduct caused Mr. Henderson's death, thereby causing Plaintiffs to incur funeral and burial expenses, and to be deprived of the loss of support, affection, counsel and advice, companionship, happiness of association, loss of assistance and services, loss of probability of inheritance and support for which they are entitled to receive from Defendants in this proceeding. Additionally, as a result of Defendant Jail's conduct Mr. Henderson suffered tremendous physical, mental and emotional pain and suffering prior to his death for which damages Plaintiffs' are also entitled to recovery from Defendants in this proceeding.

### COUNT I
### VIOLATION OF RIGHT TO ENJOY LIFE AND LIBERTY UNDER ARTICLE I, § 9 OF THE UTAH CONSTITUTION

34.     Plaintiffs reallege the forgoing paragraphs as if fully stated herein.

35.     Defendant Jail acted with deliberate, reckless and/or negligent indifference to the right of Mr. Henderson to enjoy life and liberty in violation of Article I, §1 of the Utah Constitution.

36.     Defendant Jail's conduct violated the foregoing constitutional rights of Mr. Henderson which proximately caused damages, as set forth herein, to Mr. Henderson and to Plaintiffs for which Plaintiffs are entitled to recover from Defendants in this proceeding.

### COUNT II
### VIOLATION OF RIGHT TO BE FREE FROM CONDUCT THAT CONSTITUTES CRUEL AND UNUSUAL PUNISHMENTS UNDER THE UTAH AND FEDERAL CONSTITUTIONS

37.     Plaintiffs reallege the forgoing paragraphs as if fully stated herein

38. Defendant Jail acted with deliberate, reckless and/or negligent indifference to the right of Mr. Henderson to be free from cruel and unusual punishments that went beyond the scope and maximum penalties that could be imposed for the charges he had been arrested for, all in violation of Art I, §9 of the Utah Constitution and the Eighth Amendment of the United States Constitution.

39. Defendant Jail's conduct violated the foregoing constitutional rights of Mr. Henderson which proximately caused damages, as set forth herein, to Mr. Henderson and to Plaintiffs for which Plaintiffs are entitled to recover from Defendants in this proceeding.

## COUNT III
## VIOLATION OF RIGHT THOSE IMPRISONED TO BE FREE FROM CONDUCT THAT CONSTITUTES UNNECESSARY RIGOR UNDER ARTICLE I, § 9 OF THE UTAH CONSTITUTION

40. Plaintiffs reallege the forgoing paragraphs as if fully stated herein.

41. Defendant Jail acted with deliberate, reckless and/or negligent indifference to the right of Mr. Henderson to be free from cruel and unusual punishments that went beyond the scope and maximum penalties that could be imposed for the charges he had been arrested for, and constituted unnecessary rigor in violation of Article I, § 9 of the Utah Constitution.

42. Defendant Jail's conduct violated the foregoing constitutional rights of Mr. Henderson which proximately caused damages, as set forth herein, to Mr. Henderson and to Plaintiffs for which Plaintiffs are entitled to recover from Defendants in this proceeding.

### COUNT IV
### VIOLATION OF RIGHT TO EQUAL PROTECTION UNDER ARTICLE I, § 24 OF THE UTAH CONSTITUTION AND THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT

43.     Plaintiffs reallege the forgoing paragraphs as if fully stated herein.

44.     Upon information and belief, Defendant Jail had policies and practices in place which mandate its employees and agents's action with respect rendering proper care and the procurement of safety for individuals similarly situated to Mr. Henderson. Specifically, Defendant Jail had policies and practices in place which controlled its agents and employees in their efforts to prevent mentally ill inmates from harming themselves.

45.     Upon information and belief, Defendant Jail had followed these policies and practices with other inmates who were mentally ill and/or suicidal and inclined to harm themselves.

46.     To not apply these same policies and practices to Mr. Henderson, who was similarly situated constitutes a violation of the uniform operation of laws provision of Article I, § 24 of the Utah Constitution and the equal protection clause of the Fourteenth Amendment of the United States Constitution.

47.     Defendant Jail's conduct violated the foregoing constitutional rights of Mr. Henderson which proximately caused damages, as set forth herein, to Mr. Henderson and to Plaintiffs for which Plaintiffs are entitled to recover from Defendants in this proceeding.

### COUNT V
### DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS OF MR. HENDERSON

48. Defendant Jail's policies, practices, acts, and omissions placed Mr. Henderson at unreasonable, continuing and foreseeable risk of serious medical and psychological problems.

49. Defendant Jail acted with deliberate indifference to Mr. Henderson's serious medical and psychological needs by implementing, sanctioning, approving, ratifying, or failing to remedy policies, practices, acts and omissions that deny, delay or intentionally interfere with medical and psychological treatment.

50. Defendant Jail's deliberate indifference to Mr. Henderson's serious medical and psychological needs put him at substantial risk of injury, caused avoidable pain, mental suffering, and deterioration of his health, and resulted in his premature death.

51. Defendant Jail's conduct constituted unnecessary and wanton infliction of pain on Mr. Henderson.

52. Defendant Jail's policies, practices, acts, and omissions evidence and constituted deliberate indifference to the serious medical and psychological needs of Mr. Henderson and violated the Cruel and Unusual Punishments Clause of the Eighth Amendment, made applicable to the States through the Fourteenth Amendment to the Untied States Constitution.

53. As a proximate result of Defendant Jail's unconstitutional policies, practices, acts and omissions, Mr. Henderson suffered physical, psychological and emotional injury and ultimately death for which Plaintiffs are entitled to recover from Defendants in this proceeding.

## COUNT VI
## FAILURE TO PROPERLY TRAIN

54.  Plaintiffs reallege the forgoing paragraphs as if fully stated herein.

55.  The foregoing demonstrates that Defendant Jail exceeded applicable constitutional limitations dealing with the securing of Mr. Henderson's safety.

56.  The circumstances that led to Mr. Henderson's death constituted a usual and recurring situation with which employees and agents of Defendant Jail must deal.

57.  Upon information and belief, there was inadequate training of employees and agents of Defendant Jail as to the proper treatment and care which should be administered to persons who are mentally ill and inclined to harm themselves.

58.  This inadequate training demonstrated a deliberate and/or reckless indifference on the part of Defendant Jail towards mentally ill inmates who are inclined to harm themselves.

59.  Upon information and belief, there was a direct, casual link between the constitutional deprivations suffered by Mr. Henderson at the hands of employees and agents of Defendant Jail and the inadequate training provided by Defendant Jail.

60.  Defendant Jail's conduct proximately caused damages, as set forth herein, to Mr. Henderson and to Plaintiffs for which Plaintiffs are entitled to recover from Defendants in this proceeding.

## COUNT VII
### NEGLIGENT TREATMENT OF MR. HENDERSON

61.  Plaintiffs reallege the forgoing paragraphs as if fully stated herein.

62.  The foregoing demonstrates that Defendant Jail owed a duty to Mr. Henderson to be reasonable in securing his safety while in the their custody, that the aforesaid duty was

specifically violated ast to Mr. Henderson because of their negligence, that the violation was the proximate cause of his injuries, and that the injuries suffered by Mr. Henderson caused him damages as well as damages to Plaintiffs as set forth herein.

63. Defendant Jail's negligence proximately caused damages, as set forth herein, to Mr. Henderson and to Plaintiffs for which Plaintiffs are entitled to recover from Defendants in this proceeding.

## IV. REQUESTS FOR RELIEF

64. Plaintiffs seek a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, declaring the rights of the parties named in this complaint, and an award of damages for the violations of state and federal constitutional provisions outlined heretofore and other requests for damages.

65. Plaintiffs are entitled to their costs, including reasonable attorney's fees, under 42 U.S.C. § 1988, and any other contractual arrangement or legal doctrine allowing for the same pronounced by either an applicable federal court or the Utah appellate courts.

WHEREFORE PLAINTIFFS PRAY:

1. That this court declare the rights of the parties named in this complaint and determine that economic and noneconomic damages by awarded to Plaintiffs for the violation of Mr. Henderson's constitutional and other causes of action outlined in the complaint, which caused and causing Plaintiffs great economic and noneconomic damages;

2. That Plaintiffs be awarded their costs; including reasonable attorney's fees, as

requested in this complaint, whether resolved on state or federal grounds; and

3. That the Court grant such further and general relief as to which Plaintiffs may be entitled.

DATED this 8th day of April, 2008.

                                              FLICKINGER & SUTTERFIELD, P.C.

                                              /s/ Brett R. Boulton
                                              KEVIN J. SUTTERFIELD
                                              BRETT R. BOULTON
                                              Attorneys for Plaintiffs